<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **WILLIAM CRAVEN,** | |
| **Plaintiff,** | **Civil Action No. 14-1860 (ES)** |
| **v.** | **OPINION** |
| **AMANDA LEACH, NEW JERSEY DYFS, AMY SAMPSON, NEW JERSEY DEPARTMENT OF CHILD PROTECTION AND PERMANENCY, JOHN DOES, AND NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES,** | |
| **Defendants.** | |

SALAS, DISTRICT JUDGE

## I.      INTRODUCTION

Before the Court is Defendants' motion to dismiss pro se Plaintiff William Craven's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (D.E. No. 24).  Plaintiff brings this action against the New Jersey Division of Youth and Family Services ("DYFS"), the New Jersey Department of Children and Families ("DCF"), the New Jersey Department of Child Protection and Permanency ("DCPP") (collectively, the "Agency Defendants"), DCPP caseworker Amanda Leach, and DCPP supervisor Amy Sampson (collectively, the "Individual Defendants"), alleging constitutional violations and tort claims.  The Court decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons below, the Court grants Defendants' motion to dismiss.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The Court discussed the factual and procedural background of this case in its Opinion and Order denying Plaintiff's appeal of Magistrate Judge Michael A. Hammer's Order denying Plaintiff's motion for recusal or disqualification.  (D.E. No. 31, March 18, 2015 Opinion). However, the Court will briefly recapitulate Plaintiff's Complaint below.

This action arises out of a child abuse investigation that occurred between January 2013 and February 2013.  (D.E. No. 1, Complaint ("Compl.") at 3 ¶ 2, 5 ¶ 19[1]).  Plaintiff William Craven resides in Brooklyn, New York, and is a police officer with the New York City Police Department. (*Id.* at 2 ¶ 6, 14).  In early January 2013, DCPP[2] commenced a child abuse investigation in response to a report that Plaintiff's son had been abused or neglected.  (*Id.* at 2 ¶ 8, 3 ¶ 2).  Defendant Amanda Leach was the caseworker assigned to Plaintiff's case, and Defendant Amy Sampson was the supervisor assigned to oversee Leach's work.  (*Id.* at 4 ¶ 7).  The investigation was officially closed in February 2013, with DCPP notifying Plaintiff that there was no finding of abuse or neglect.  (*Id.* at 4 ¶ 15, 5 ¶ 19).

Plaintiff alleges that, during the investigation, Defendant Leach unlawfully disseminated "confidential information that was contain[ed] in a N.J. Domestic Violence report," (*id.* at 4 ¶ 7), and other "private information" obtained during the investigation, (*id.* at 5 ¶ 17).  Plaintiff does not name any party to which Defendant Leach divulged the information, but claims that the party "was not at any time, privy to such confidential information involving [plaintiff]."  (*Id.* at 4 ¶ 7). Plaintiff further alleges that Defendant Leach "never denied" divulging the private information

---

[1] Because various sections of the Complaint are separately numbered, the Court will identify allegations by both page and paragraph number to avoid confusion.
[2] DCPP was previously known as DYFS, and was renamed in 2012.  2012 N.J. Laws ch. 16 (renaming DYFS to DCPP).

and that, even though Plaintiff brought the issue to Defendant Sampson's attention, Sampson did nothing to address his complaints. (*Id*. at 4 ¶¶ 9, 12).

Additionally, Plaintiff asserts various allegations concerning the fairness and propriety of Defendant Leach's conduct during the investigation, including that Leach failed to interview individuals that Plaintiff referred to her, (*id*. at 5-6 ¶¶ 22-23), favored Plaintiff's ex-girlfriend, (*id*. at 6 ¶¶ 25, 29-30), treated Plaintiff as though he was dangerous and had anger issues, (*id*. at 6-7 ¶ 31), and ignored or withheld information that would have exonerated Plaintiff, (*id*. at 9 ¶ 44). Plaintiff argues that his employment was placed at risk and that he suffered an emotional and financial loss as a result of Defendants' actions. (*Id*. at 6 ¶ 31, 7).

On March 24, 2014, Plaintiff filed the instant complaint against the Agency Defendants and Defendants Leach and Sampson in their individual capacities. (*Id*. at 10-13). In Counts 1 and 4, Plaintiff asserts claims under 42 U.S.C. § 1983, alleging that Defendants' conduct during the investigation violated his due process rights under the Fourteenth Amendment. (*Id*. at 10, 13). Specifically, in Count 1, Plaintiff alleges that all Defendants "acted intentionally and wrongfully and or [sic] with deliberate indifference with respect to his privacy, thereby depriving him of substantive due process under the Fourteenth Amendment. (*Id*. at 10-11 ¶¶ 1-9). In Count 4, Plaintiff asserts a similar claim against the Individual Defendants, alleging that Defendant Leach's dissemination of information, and Defendant Sampson's action or inaction, violated his "right to privacy" and his rights under the Fourteenth Amendment. (*Id*. at 13 ¶¶ 1-3).

Additionally, Plaintiff asserts claims for negligence: Count 2 alleges common law negligence and gross negligence, (*id*. at 11 ¶¶ 1-5), and Count 3 alleges negligence under the "New Jersey Tort-Negligence Act(s)," (*id*. at 12-13 ¶¶ 1-7).[3] These claims appear to be directed against

---

[3] The Court construes Plaintiff's claim under the "New Jersey Tort-Negligence Act" as a claim under the New Jersey Tort Claims Act, N.J.S.A. § 59:1-1 *et seq*., a "statutory regime regulating tort claims against

3

all Defendants.  (*Id.*).  In Count 2, Plaintiff asserts that Defendants Leach and DCPP negligently handled Plaintiff's private information and that Defendant Sampson was negligent in her supervision of Leach.  (*Id.* at 11 ¶¶ 1-5).  In Count 3, Plaintiff claims that he has complied with the timely filing requirements outlined in the New Jersey Tort Claims Act and reiterates the same allegations contained in Count 2.  (*Id.* at 12-13 ¶¶ 1-7).

On July 11, 2014, Defendants moved to dismiss Plaintiff's Complaint in its entirety, but only included arguments in their brief relating to Counts 1 and 4 of the Complaint.  (D.E. No. 16).  On January 9, 2015, the Court issued a Letter Order requesting that Defendants refile their motion to dismiss to include arguments regarding Plaintiff's state law negligence claims.  (D.E. No. 23).  On February 9, 2015, Defendants refiled their motion to dismiss addressing all of Plaintiff's claims.  (D.E. No. 24-2, Brief in Support of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Def. Mov. Br.")).  Plaintiff responded to Defendants' motion on March 2, 2015.  (D.E. No. 25).  Defendants replied on March 11, 2015.  (D.E. No. 29).  This motion is now ripe for resolution.

## III.  JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.  (Compl. at 1).

## IV.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The

---

public entities and employees."  *Forcella v. City of Ocean City*, 70 F. Supp. 2d 512, 515 (D.N.J. 1999).  The Court is unaware of any "New Jersey Tort-Negligence Act," and Plaintiff repeatedly refers to the "Tort Claim Notice" required by the New Jersey Tort Claims Act.  (*See* Compl. at 2 ¶ 8, 7 ¶ 34, 12).

pleading standard announced by Rule 8 does not require detailed factual allegations; however, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  In addition, the plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Furthermore, when deciding a Rule 12(b)(6) motion, a court may only consider the complaint, its attached exhibits, matters of the public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011).

5

In ruling on the present motion, the Court must construe Plaintiff's complaint liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). A "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (internal quotation marks and citation omitted). Nevertheless, "a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citation omitted); *see also Ray v. First Nat'l Bank of Omaha*, 413 F. App'x 427, 430 (3d Cir. 2011) ("A district court should not dismiss a pro se complaint without allowing the plaintiff an opportunity to amend his complaint unless an amendment would be inequitable or futile.").

## V.    DISCUSSION

### A.  Section 1983 Claims

Under 42 U.S.C. § 1983, a plaintiff may assert a cause of action for certain violations of constitutional rights. The relevant part of § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Therefore, to state a valid claim for relief under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and . . . that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

Plaintiff asserts two claims under § 1983 against all Defendants for violations of his Fourteenth Amendment rights.  As detailed above, Plaintiff alleges in Count 1 that during the roughly one-month investigation, Defendant Leach exhibited favoritism towards Plaintiff's ex-girlfriend, declined to interview witnesses Plaintiff referred to her, and expressed her view that Plaintiff had "anger issues."  (Compl. at 6 ¶¶ 25-26, 30-31).  Plaintiff also claims that: the "investigation was supposed to be against the [child's] mom" from the outset, (*id.* at 9 ¶ 43 (internal quotation marks omitted)); he was "force[d] to be without the child for some time, (*id.* at 9 ¶ 47); and the "child [was] not allowed to be around [his] dad alone nor spend the night for visitation," (*id.*).[4]  Next, in Count 4, Plaintiff asserts that the Individual Defendants violated his constitutional right to privacy under the Fourteenth Amendment because they allegedly disclosed information relating to the child abuse investigation to an unprivileged third party.  (*Id.* at 13).

The Agency Defendants argue that the Court must dismiss Plaintiff's § 1983 claims because the Agency Defendants are not "persons" for purposes of § 1983.  (Def. Mov. Br. at 7-8). The Individual Defendants argue that the claims should be dismissed because Plaintiff has failed to state a claim under § 1983 or, alternatively, because they are entitled to qualified immunity.  (*Id.* at 8-13; D.E. No. 29, Reply Brief in Support of Defendants' Motion to Dismiss ("Def. Rep. Br.") at 3-10).  In response, Plaintiff does not address whether the Agency Defendants are "persons," and only asserts that the Individual Defendants are "persons."  (Plaintiff's Brief in Opposition to Motion to Dismiss ("Pl. Opp. Br.") at 3-4).  The Court will consider Plaintiff's claims as to the Agency and Individual Defendants in turn.

---

[4] Plaintiff also appears to support his § 1983 claim in Count 1 with the allegation that Defendants disseminated confidential information.  (*See* Compl. at 11 ¶ 6 ("Defendants were obligated to keep plaintiff [sic] information private/confidential . . . .")).  However, because the § 1983 claim in Count 4 appears to be premised exclusively on this alleged dissemination of confidential information, the Court addresses the allegation in its discussion of Count 4.

### 1.   Claims Against the Agency Defendants

The Agency Defendants argue that they are not "persons" within the meaning of § 1983, and therefore Plaintiff's § 1983 claims should be dismissed.  Defendants' argument is based on "the fundamental principle of sovereign immunity," embodied within the Eleventh Amendment, which limits the judicial authority of federal courts to "entertain a suit brought by a citizen against his own State."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (internal citation omitted).

It is well-settled that Congress, in passing § 1983, "had no intention to disturb the States' Eleventh Amendment immunity."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  Similarly, "the State of New Jersey has not waived its sovereign immunity with respect to § 1983 claims in federal court."  *Mierzwa v. United States*, 282 F. App'x. 973, 976 (3d Cir. 2008) (citing *Ritchie v. Cahall*, 386 F. Supp. 1207, 1209-10 (D.N.J. 1974)).  As such, neither the State of New Jersey, "[n]or governmental entities that are considered 'arms of the State,'" are "persons" for the purposes of § 1983.  *Will*, 491 U.S. at 70.  Therefore, these entities may not be sued in federal court under § 1983.  *Id.*

DCF was established in 2006 and is a principal department of the State of New Jersey.  N.J.S.A. § 9:3A-3 (2006).  DCPP—formerly known as DYFS—is organized within DCF.  *See* 2012 N.J. Laws ch. 16 (renaming DYFS to DCPP).  Courts in this district have firmly established that DCF is an arm of the state, and therefore entitled to sovereign immunity.  *See Rich v. New Jersey*, No. 14-2075, 2015 WL 2226029, at *7 (D.N.J. May 12, 2015); *Sweet-Springs v. Dep't of Children & Families*, No. 12-706, 2013 WL 3043644, at *5 (D.N.J. June 17, 2013); *Price v. Abet Med. Supply*, No. 11-6481, 2012 WL 3598825, at *2 (D.N.J. Aug. 20, 2012).  It is also "beyond dispute" that DYFS—now DCPP—is an arm of the state and immune from suit under § 1983.

*Mammaro v. N.J. Div. of Child Permanency & Prot.*, No. 13-6483, 2015 WL 225999, at \*4 (D.N.J. Jan. 16, 2015) (quoting *N.J. Div. of Youth & Family Servs. v. D.C.*, 118 N.J. 388, 396 (1990)); *see also Howard v. N.J. Div. of Youth & Family Servs.*, 398 F. App'x. 807, 811-12 (3d Cir. 2010); *Palmer-Carri v. Maplewood Police Dep't*, No. 13-02796, 2013 WL 5574693, at \*3 (D.N.J. Oct. 9, 2013); *Sweet-Springs*, 2013 WL 3043644, at \*5; *Melleady v. Blake*, No. 11-1807, 2011 WL 6303245, at \*13 (D.N.J. Dec. 15, 2011).  Therefore, Plaintiff's § 1983 claims against the Agency Defendants are dismissed *with prejudice* due to sovereign immunity.

### 2.  Claims Against Individual Defendants

Plaintiff also asserts § 1983 claims against the Individual Defendants Leach and Sampson. (Compl. at 10-11, 13).  Individual Defendants respond to the § 1983 claims by arguing that they are entitled to qualified immunity and that Plaintiff fails to state a claim under § 1983.  (Def. Mov. Br. 7-9; Def. Rep. Br. at 3-4).

#### i.  Substantive Due Process

As discussed above, to state a claim under § 1983, Plaintiff must allege the violation of a constitutional right.  Parents have a constitutionally protected liberty interest "in the custody, care and management of their children."  *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997) (citations omitted).  However, this constitutional protection is not absolute—"[a] parent's liberty interest can be overridden by the government's compelling interest to protect children, and does not include a right to remain free from child abuse investigations." *Livingston v. Allegheny Cnty.*, 400 F. App'x 659, 664 (3d Cir. 2010) (quoting *Croft*, 103 F.3d at 1125) (internal quotation marks omitted).  Indeed, "disruption or disintegration of family life . . . does not, in and of itself, constitute a constitutional deprivation" and is permissible when the government possesses "some reasonable and articulable evidence giving rise to a reasonable

9

suspicion that a child has been abused or is in imminent danger of abuse." *Croft*, 103 F.3d at 1126 (citation omitted). When an official possesses such evidence, removing a child from parental custody does not infringe on parental rights, even when evidence later obtained during an investigation demonstrates that no abuse occurred. *Id.*

To proceed on a § 1983 claim premised on a substantive due process violation, Plaintiff must allege that the official conduct underlying the dispute was "arbitrary, or conscience shocking." *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). Accordingly, for liability to attach, a social worker's conduct "must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Miller v. City of Phila.*, 174 F.3d 368, 375-76 (3d Cir. 1999). This "standard is met if the child is removed without 'an objectively reasonable suspicion of abuse,' based on the information available at the time." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 241 (3d Cir. 2013) (quoting *Croft*, 103 F.3d at 1126). "Reasonable suspicion is lacking when a [social worker] has 'consciously disregarded a great risk that there had been no abuse.'" *Id.* (quoting *Ziccardi v. City of Phila.*, 288 F.3d 57, 66 (3d Cir. 2002)).

Plaintiff argues that Leach's conduct during the course of the investigation rises to the level of an arbitrary and conscience shocking due process violation. (Pl. Opp. Br. at 8). Individual Defendants argue that Plaintiff fails to allege that the investigation was arbitrary and has not "pled any facts that would shock the conscience." (Def. Mov. Br. at 10).

In certain circumstances, "a seemingly-arbitrary and adversarial investigation into [p]laintiff's parenting and the forcible removal of [his child] without a hearing" could violate a plaintiff's due process rights. *Mammaro*, 2015 WL 225999, at *7. However, none of Plaintiff's allegations rise to the level of such a violation. With respect to the "one-sided" investigation,

Plaintiff has failed to allege any facts that could reasonably lead to the inference that Leach consciously disregarded a great risk that there had been no abuse.  "There is no question" that the state has an "interest in preventing child abuse . . . ."  *Coleman v. N.J. Div. of Youth & Family Servs.*, 246 F. Supp. 2d 384, 392 (D.N.J. 2003) (internal quotations marks and citations omitted).  In fact, DCPP has a statutory duty to investigate reports of child abuse.  N.J.S.A. §§ 9:6-8.10, -8.18, 30:4C-11.1-2; *see also Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 493-94 (D.N.J. 2001) (observing that § 9:6-8.11 requires that, "upon receipt of an allegation of child abuse or neglect, DYFS 'shall immediately take such action as shall be necessary to insure the safety of the child and to that end'") (quoting § 9:6-8.11)); *State v. P.Z.*, 152 N.J. 86, 96-97 (1997) (explaining that DYFS "is required to investigate the allegations [of child abuse], and to take appropriate action to safeguard the child or children from further injury"); *N.J. Div. of Youth and Family Servs. v. S.H.*, 106 A.3d 1256, 1263 (N.J. Super. Ct. App. Div. 2015) (stating that DCPP is obligated to investigate reports of child abuse under § 9:6-8.18).   As Plaintiff himself acknowledges, the DCPP investigation was initiated following a report of child abuse that occurred in Plaintiff's home involving his son. [5]  (Compl. at 2-3, 8).  Plaintiff does not contest the reliability of this report.  Nor has he provided any factual basis from which this Court could infer that, in commencing the investigation and focusing it on Plaintiff, the Individual Defendants lacked an "objectively reasonable suspicion of abuse."  *See Mulholland*, 706 F.3d at 241 (internal quotation marks omitted).

---

[5] The Complaint is unclear as to the exact nature of the report that led to DCPP's investigation.  Plaintiff refers to child abuse reports made pursuant to N.J.S.A. § 9:6-8.10, (*id.* at 4 ¶¶ 8, 14), and an "N.J. Domestic Violence Report," (*id.* at 4 ¶ 7).  Plaintiff's reference to the "N.J. Domestic Violence Report" discusses its relation to N.J.S.A. § 9:6-8.10b, which addresses child abuse reports.  (*Id.* at 4 ¶¶ 7-8).  Thus, Plaintiff's sole reference to a domestic violence report is more likely a reference to a child abuse report.  In any event, Plaintiff has not alleged that there was no basis for DCPP to initiate an investigation.

Numerous cases have upheld social service caseworkers' conduct where there is no indication that the caseworkers had reason to disbelieve allegations against the target of their conduct.  *See Mulholland*, 706 F.3d at 243 (holding that child services agency had a reasonable suspicion of abuse because report of abuse was "specific credible, contemporaneous," and the agency "had no sound reason to disbelieve the allegations against [plaintiff]"); *Brown v. Daniels*, 128 F. App'x 910, 914 (3d Cir. 2005) (holding that social services caseworker's conduct did not shock the conscience where plaintiffs did not dispute report that their child had been abused or that their child had bruising as a result of their abuse); *Miller*, 174 F.3d at 377 (holding that social worker's acts did not shock the conscience because she had reasonable suspicion of abuse based on video evidence of injuries, doctor's opinion, and past history of abuse).  In short, Plaintiff has failed to make any showing that the facts available to the Individual Defendants "raised serious questions about the veracity" of the report of child abuse such that their actions could be said to be arbitrary or conscience-shocking.  *See Mulholland*, 706 F.3d at 243 (quoting *Croft*, 103 F.3d at 1126).

Any substantive due process claim premised on Plaintiff's allegation that he was unable to be alone with his child during the one-month investigation is also deficient.  As an initial matter, it is not evident from the Complaint that any restriction on Plaintiff's visitation rights was involuntarily imposed by Leach—rather than by the child's mother.  However, even assuming that the restrictions were involuntarily imposed, Plaintiff's allegations still do not make out a constitutional violation.

Though the Third Circuit indicated in *Croft* that the total separation of a parent and child "during the pendency of child abuse investigations" implicates due process, 103 F.3d at 1125 nn.3-4, Plaintiff does not allege a total separation.  Rather, his allegations reveal that he engaged in

12

supervised visitation.  (*See* Compl. at 7 ¶ 31, 9 ¶ 47 (stating that Plaintiff was not allowed to spend time alone with his son during the investigation)).

In addition, Plaintiff has not pled that he had full custody of his son and it appears from the Complaint that Plaintiff did not have full custody of his son before the investigation began.  (*See* Compl. at 6 ¶ 29, 9 ¶ 47).  While "non-custodial parent[s] ha[ve] a liberty interest in [their] right to communicate with and visit the[ir] child[ren]," *Santos v. Sec'y of DHS*, No. 10-7266, 2012 WL 2997036, at *11 (E.D. Pa July 23, 2012), requiring supervised visitation does not clearly deprive Plaintiff of either of these rights.

Finally, Plaintiff has failed to plead any facts to demonstrate that, even if Leach (not the child's mother) required Plaintiff to submit to supervised visits during the investigation, she consciously disregarded a great risk that there had been no abuse.  In *Croft*, the Third Circuit found that a social worker's conduct shocked the conscience when, relying solely on an anonymous report of abuse, she coerced a father into leaving the family home during a child abuse investigation by threatening to remove his child from the home if he did not comply.  103 F.3d at 1127.  Because the facts available to the social worker prior to threatening removal "raised serious questions about the veracity of the informant," the Third Circuit held that the social worker lacked reasonable suspicion of abuse, and therefore, the coerced removal of the father violated his substantive due process rights. *Id.* at 1126.  Plaintiff has not established any factual basis to suggest that Leach's concern for the safety and well-being of his child was not well founded, and he only makes conclusory allegations that Leach "withheld significant information that would have proven [he] did not do anything to harm the child at any time, and ignored information that would have naturally proven who was the primary physical aggressor with a propensity to be violent." (Compl. at 9).

The Court concludes that Plaintiff has not adequately alleged that the Individual Defendants' conduct during the course of the investigation violated his substantive due process rights under the Fourteenth Amendment. Accordingly, the Court dismisses Count 1 of Plaintiff's Complaint *without prejudice*.

### ii.  Right to Privacy

In Count 4, Plaintiff asserts a § 1983 claim based on Defendant Leach's alleged disclosure of confidential information regarding the child abuse investigation. (*Id.* at 13). The "notions of substantive due process contained within the Fourteenth Amendment safeguard individuals from unwarranted governmental intrusions into their personal lives." *Nunez v. Pachman*, 578 F.3d 228, 231 n.7 (3d Cir. 2009) (citations omitted). In *Whalen v. Roe*, the Supreme Court held that the Fourteenth Amendment protects two kinds of privacy interests—"the individual interest in avoiding disclosure of personal matters and . . . the interest in independence in making certain kinds of important decisions." 429 U.S. 589, 599-600 (1977) (footnotes omitted). The former interest—which is most relevant here—has been characterized as the "right to confidentiality," and protects only "highly personal matters representing the most intimate aspects of human affairs." *Malleus v. George*, 641 F.3d 560, 564-66 (3d Cir. 2011) (quoting *Nunez*, 579 F.3d at 232). The Third Circuit has generally recognized three categories of protected information: "sexual information, medical information, and some financial information." *Id.* (internal citations omitted). The constitutional privacy right is limited and courts have been reluctant to expand it further. *See id.* at 566; *Nunez*, 578 F.3d at 232.

Plaintiff makes a vague allegation that Leach disclosed "confidential information that was contain[ed] in a N.J. Domestic Violence report . . . involving [him]self,"[6] (Compl. at 4 ¶ 7), his

---

[6] While Plaintiff points out that New Jersey law requires that reports of child abuse be kept confidential, (Compl. at 4 ¶¶ 7-8; *see also* N.J.S.A. § 9:6-8.10a), state law is not determinative of the scope of the

"personal records," (*id.* at 8 ¶ 35), and "health information," (*id.* at 12 ¶ 7).  Notably absent from the pleadings are any facts from which this Court can determine that Plaintiff had a constitutionally protected privacy interest in the allegedly disclosed information—let alone whether the Individual Defendants' conduct amounted to a violation of that interest.  There are no specific allegations pertaining to this claim.  As a result, the Court concludes that Plaintiff has failed to state a claim under § 1983 and dismisses Count 4 *without prejudice*.[7]

### B.  State Law Tort Claims

As discussed above, Plaintiff also asserts two state law claims against all Defendants for common law negligence and gross negligence, and negligence under the New Jersey Tort Claims Act.  (Compl. at 11-13).  However, when a court has dismissed all claims over which it has original jurisdiction, it has discretion to dismiss the remaining state-law claims.  28 U.S.C. § 1367(c); *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009).  The exercise of this discretion "should be based on considerations of 'judicial economy, convenience and fairness to the litigants.'"  *Kach*, 589 F.3d at 650 (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996)).  Exercise of this direction is proper where a plaintiff's § 1983 claims are dismissed and the court declines to retain jurisdiction over the plaintiff's remaining state law claims.  *See id.*; *see also Montgomery v. Aparatis Distrib. Co.*, No. 14-3257, 2015 WL 1600521, at *3 (3d Cir. Apr. 10, 2015) (finding no abuse of discretion where district court refused to exercise

---

constitutional right to privacy.  *See Nunez*, 578 F.3d at 233.

[7] Because the Court concludes that Plaintiff has not pled a constitutional violation with respect to either claim, the Court does not analyze whether Individual Defendants are entitled to qualified immunity.  *See Gannaway v. Karetas*, 438 F. App'x 61, 67 (3d Cir. 2011) ("As there was no constitutional violation, we need not engage in an analysis of qualified immunity.").  Similarly, though neither party raised this argument, Plaintiff's § 1983 allegations against Defendant Sampson fail because Plaintiff has not pled any allegations—namely the violation of a constitutional right—that would give rise to supervisory liability. *See, e.g.*, *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (holding that in order to state a claim for supervisory liability under § 1983 plaintiff must plead that supervisors "directed others to violate [her rights]") (internal quotation marks and citation omitted)).

supplemental jurisdiction over state law tort claims after plaintiff's § 1983 claims were dismissed); *Mayercheck v. Judges of Pa. Supreme Court*, 395 F. App'x 839, 843-44 (3d Cir. 2010) (stating that the District Court properly dismissed plaintiff's remaining state law claims for lack of supplemental jurisdiction after § 1983 claims were dismissed).[8]   Accordingly, because the Court has dismissed Plaintiff's § 1983 claims, the claims over which it has original jurisdiction, it will decline to exercise supplemental jurisdiction over Plaintiff's negligence claims against all Defendants, which arise under state law.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants Defendants' 12(b)(6) motion to dismiss.  An appropriate Order accompanies this opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[8] Courts have also declined to exercise supplemental jurisdiction over a plaintiff's remaining state law claims where the federal claims were dismissed *without* prejudice.  *See, e.g., Brown v. Corr. Med. Servs.*, No. 15-1372, 2015 WL 4478143, at *8 (D.N.J. July 22, 2015) (dismissing plaintiff's § 1983 claims without prejudice and declining to exercise supplemental jurisdiction over remaining state law claims); *A.D. v. Haddon Heights Bd. of Educ.*, No. 14-1880, 2015 WL 892643, at *15 (D.N.J. Mar. 2, 2015) ("[h]aving dismissed the federal claims without prejudice, the Court declines to exercise supplemental jurisdiction over Plaintiffs' analogue state law claims.").